HENRY C. ROWLAND v. THE SUPERINTENDENTS OF THE POOR FOR KALAMAZOO COUNTY.

*Practice—Objections to evidence—Actions of tort against municipal corporations.*

| 49 | 553 |
| 99 | 261 |
| 49 | 553 |
| 112 | · 22 |
| 49 | 553 |
| 137 | ¹711 |

If a defendant proposes to object to the introduction of any evidence under the declaration on the ground that no right of action exists and that, if there were any, the allegations of the declaration do not show him to be properly impleaded, he should demur to the declaration instead of pleading the general issue and then objecting, unless his objection goes to the whole merits of the case or cause of action and is so clear that the declaration would not sustain a judgment even if the plaintiff should recover on the merits.

Superintendents of the poor, being empowered by statute to keep up farms for the employment and support of the county poor, may be held liable, as owners and managers of the farm property, for injuries resulting from their management, such as negligently allowing fires kindled upon the premises to extend to the property of others, or permitting the spread of contagious diseases from the farm stock to other animals, or allowing the stock to trespass upon other lands.

Municipal corporations, like individuals, are bound to so manage their property and business as to produce no injury to others.

Error to Kalamazoo.    Submitted Nov. 1.    Decided Jan. 5.

CASE.    Plaintiff brings error.    Reversed.

*T. R. Sherwood* for appellant.    The office of superintendent of the poor is created by the Legislature and is a county office: *Hewitt v. Sup'ts* 5 Mich. 169; and when the superintendents are appointed they become a body corporate: Comp. L. § 603; in managing a county poor farm they are bound by the same obligations as rest upon individuals engaged in similar business: *Scott v. Mayor of Manchester* 1 H. & N. 59; *Pittsburgh v. Grier* 22 Penn St. 54; *Memphis v. Kimbrough* 12 Heisk. 133; *Macauley v. New York* 67 N. Y. 602; 2 Thomp. Neg. 734 § 2; *Bailey v. New York* 3 Hill 531: 2 Den. 433; *Lloyd v. New York* 5 N. Y.

369; Cooley on Torts 619, 620; 1 Potter's Corp. §§ 376–386; 466 note 17, 467 § 386; *Detroit v. Corey* 9 Mich. 186; *Hannon v. County of St. Louis* 62 Mo. 313; *Park Commissioners v. Common Council* 28 Mich. 240; Wharton's Neg. 238–239, 240 § 256; *Stone v. Augusta* 46 Me. 140; *Emery v. Lowell* 104 Mass. 13; 2 Dillon Corp. (3d ed.) 994; for failure or neglect to perform its ministerial duties or for performing them in an unskillful, negligent or improper manner the corporation is liable: *Larkin v. County of Saginaw* 11 Mich. 91; *Comm'rs v. Butt* 2 Ohio 348; if the performance of a ministerial act is discretionary with a corporation it is not liable for its non-performance, but if it undertake to do the act, and its officers and agents do the same negligently or unskillfully and thereby cause an injury to an individual, the corporation will be liable: *White Lead Co. v. Rochester* 3 Comst. 463; *Lawrence v. Fairhaven* 5 Gray 110; *Mayor of Memphis v. Lasser* 9 Humph. 757; corporations are liable for active misfeasance: *Ballou v. Inhabitants of Hopkinton* 4 Gray 325; Cooley on Torts 122; *Sheldon v. Kalamazoo* 24 Mich. 383; *Thayer v. City of Boston* 19 Pick. 511; *Peck v. Ellsworth* 36 Me. 398; *McCombs v. Akron* 15 Ohio 474; if a public corporation, by its active wrong, done while engaged in business within the scope of its authority, directly injures an individual it will be liable: *Jacksonville v. Lambert* 62 Ill. 519; *Nevins v. Peoria* 41 Ill. 502; *Rhodes v. Cleveland* 10 Ohio 160; *Detroit v. Blackeby* 21 Mich. 112; *Taylor v. Lake Shore & Mich. S. R'y* 45 Mich. 77; action for damages for spreading contagious disease lies at common law: Evans' Pothier, part 1 ch. 2, art. 3, p. 166; *Anderson v. Buckton* 1 Strange 192; *Mullett v. Mason* L. R. 1 C. P. 559; *Barnum v. Vandusen* 16 Conn. 200; *Jeffrey v. Bigelow* 13 Wend. 518; *Hite v. Blandford* 45 Ill. 9; *Fultz v. Wycoff* 25 Ind. 321; *Mills v. New York R. R. Co.* 2 Robt. 329; *Eaton v. Winnie* 20 Mich. 156.

*Frank E. Knappen* and *Edwin M. Irish* for appellees. Quasi corporations, and municipal corporations exercising quasi municipal functions, are not liable for misfeasance or

non-feasance, unless such liability is created by statute: *Russell v. Devon* 2 Term 667; *Mower v. Leicester* 9 Mass. 247; *Bigelow v. Randolph* 14 Gray 541; *Hafford v. New Bedford* 16 Gray 297; *Reardon v. St. Louis Co.* 36 Mo. 555; *Ward v. County of Hartford* 12 Conn. 404; *Commissioners of Hamilton County v. Mighels* 7 Ohio St. 109; *Crozier v. Bartlett* 17 Johns. 439; *Maxmilian v. Mayor* 62 N. Y. 160; *Ogg v. Lansing* 35 Ia. 495; *Brown v. Vinalhaven* 65 Me. 402.

MARSTON, J.  The practice adopted in this case is one not to be commended or encouraged.  The defendants pleaded the general issue, and upon the trial objected to any and all evidence being received under the declaration, assigning various reasons therefor, which, if well founded, should have been raised by demurring to the declaration, thus saving all unnecessary trouble and expense.  We do not say that an objection going to the whole merits of the case or cause of action stated in the declaration may not be raised in this way, but when it is, the position taken must be very clear—so clear, indeed, that the declaration would not support a judgment should the plaintiff recover in a trial had upon the merits.  *Stoflet v. Marker* 34 Mich. 313; *Brown v. McHugh* 35 Mich. 50; *Aldrich v. Chubb* 35 Mich. 350; *Jackson v. Collins* 39 Mich. 558; *Briggs v. Milburn* 40 Mich. 513.

We are of opinion that the declaration in this case was sufficient,* if a cause of action could be maintained at all, and that it was not open to the objections urged against it.

---

* The declaration is as follows:

State of Michigan:—The Circuit Court for the County of Kalamazoo. Kalamazoo County, ss.    Henry C. Rowland, plaintiff in this suit, by T. R. Sherwood, his attorney, complains of the Superintendents of the Poor of the county of Kalamazoo, in said State, defendants; they having been duly summoned to answer the said Henry C. Rowland of a plea of trespass on the case.

For that whereas heretofore, to wit, on the 10th day of October, 1879, the said plaintiff at to wit, the township of Comstock, in said county, was the owner and in possession of, and had upon his farm, in said township, a large number of swine, to wit, forty-two, of great value, to wit, three hundred dollars, and all of said swine being sound and healthy and free from disease, and among which was one large black boar.

Under the statute the superintendents of the poor have
power to provide suitable places for the keeping of the
poor and to rent houses and lands and to cause the poor to
be maintained at such places. The board of supervisors
may direct the purchase of one or more tracts of land for a
like purpose. The superintendents have power to purchase

---

And the said defendants on, to wit, the day and year last aforesaid, at
the said township of Comstock, had possession of a large tract of land
known as the County Farm in said township, and a quantity of stock,
among which were a large number of swine thereon, and had the care,
management, custody, direction and control of said farm and stock
thereon.

And the said plaintiff heretofore, to wit on the day and year last afore-
said, at the said township of Comstock, at the special instance and
request of the said defendants, and in consideration that the said defend-
ants would exercise due and proper care in and about the use, custody,
control and mangement of the said black boar; and not suffer or permit
any damage or injury to be done to the said black boar, or to the other
swine of the said plaintiff, and not suffer or permit the said black boar,.
or said other swine of the said plaintiff to become in any manner dam-
aged, injured or diseased, or be exposed to any contagion, infection or
disease of any kind known among swine; or which might, or could in
any manner injure the said black boar, or be communicated to him, or
to the plaintiff's other swine hereinbefore mentioned: caused to be deliv-
ered to said defendants, and permitted said defendants to take, said
black boar to the said County Farm of said defendants, to be used by said
defendants as a stock hog among the swine of said defendants upon said
County Farm, and to be returned to said plaintiff when requested.

And the said defendants then and there had and received the said
black boar of said plaintiff, of great value, to wit, thirty dollars, for the
purpose aforesaid, and it thereupon became and was the duty of the said
defendants, to take due and proper care of said black boar; and safely
keep, care for and return and deliver to said plaintiff, at his farm in
Comstock aforesaid, without injury or damage, and free from disease or
exposure to any hurtful, contagious malady, disease or sickness which
might affect injuriously the said black boar, and which might or could
be in any manner communicated to him, or to the said plaintiff's other
swine aforesaid, or by said black boar communicated to them.

Yet the said defendants, not regarding their duty, as aforesaid in the
premises, afterwards, to wit, on the 10th day of October, 1879, and on
divers and sundry other days and times between that day and the 26th
day of October, 1879, negligently, carelessly and wilfully contrived
craftily and subtly to injure and defraud said plaintiff in this behalf, did
not, nor would safely and securely keep and take due and proper care
of the said black boar, but caused him to be placed and kept with the
other swine upon the said County Farm, in the possession, care and cus-
tody of the said defendants, which were distempered, disordered and
sick at the time with a noxious, dangerous and contagious disease
commonly called and known as "hog cholera;" and so negligently
and carelessly and wilfully kept, used and controlled said black boar,
that by reason of the premises the said contagious disease was commu-
nicated by the said other swine, so kept by said defendants upon said
County Farm, to the said black boar, and which so affected and dis-
ordered him, that on, to wit, the 29th day of October, 1879, he died.

And after said black boar and the defendants' swine had become

the implements and materials necessary for the maintenance of the poor and their employment and labor, and to sell and dispose of the proceeds of such labor as they shall deem expedient, and all moneys received by them are to be paid over to the county treasurer, and the statute clearly contem-

affected and sickened by said contagious disease, as aforesaid, and while he was thus diseased, and which was well known to said defendants, and while thus in their possession and under their control, as aforesaid, to wit, on the 26th day of October, 1879, said defendants negligently, carelessly and wilfully, as aforesaid, contriving further to injure and defraud the said plaintiff ; did take or cause to be taken, the said black boar to the said farm of the said plaintiff, and while said black boar was so affected, disordered and sickened with said contagious disease, and which was well known to said defendants; caused him to be turned into the inclosure upon plaintiff's said farm, within which the other swine of said plaintiff, above mentioned, were kept, and were then and there running, and in the adjoining inclosure upon plaintiff's said farm, thereby carelessly, negligently and wilfully exposing and bringing in contact the said black boar, so diseased, as aforesaid, with the plaintiff's said other swine upon his said farm, to the number of forty-one, and which were all then sound and healthy and of great value, to wit, three hundred dollars; and by reason of the premises, and by and through the carelessness, negligence and wilfullness of the said defendants, the said dangerous and contagious disease was communicated by the said black boar, so diseased and sickened, as aforesaid, to the said forty-one swine of the said plaintiff, so that thereupon they all became sick and disordered with said contagious disease, and in consequence and from the effects of the same they all died, to the great damage of plaintiff; and said plaintiff, in his endeavors to cure his said swine of said contagious disease so communicated to them, was compelled to and did pay out divers large sums of money, to wit, fifty dollars for medicine, nursing, care and other things for said swine, all of which said premises are to the damage of the said plaintiff one thousand dollars.

And also for that whereas heretofore, to wit, on the 10th day of October, 1879, the said plaintiff, at to wit, the township of Comstock, in said county, was the owner and in possession of, and had upon his farm in said township, a large number of swine, to wit, forty-two, of great value, to wit, three hundred dollars, and all of said swine being sound, healthy and free from disease, and among which there was one large black boar.

And the said defendants, on to wit, the day and year last aforesaid, at the said township of Comstock, were possessed of a large tract of land, known as the County Farm in said township, and a quantity of stock, among which were a large number of swine thereon, and had the care, management, custody, direction and control of said farm and stock thereon.

And the said plaintiff heretofore, to wit, on the day and year last aforesaid, at the said township of Comstock, at the special instance and request of the said defendants, and in consideration that the said defendants would exercise due and proper care in and about the use, custody, control and management of the said black boar, and not suffer or permit any damage or injury to be done to said black boar, or to the other swine of the said plaintiff, and not suffer or permit the said black boar, or said other swine of said plaintiff, to become in any manner damaged, injured

plates, and such is the practice, that the superintendents may purchase and keep upon the farm the usual and ordinary farm stock.   Comp. L. §§ 1820, 1821, 1824, 1843.

The complaint made against them in this case is as owners and managers of farm property, and the different capac-

---

or diseased, or be exposed to any contagion, infection or disease of any kind known among swine, or which might or could in any manner injure the said black boar, or be communicated to him or to the plaintiff's other swine hereinbefore mentioned; caused to be delivered to said defendants and permitted the said defendants to take said black boar to and upon the said County Farm of said defendants, to be used by said defendants. as a stock hog among the swine of said defendants upon said county farm, and to be returned to said plaintiff when requested.

And the said defendants then and there had and received the said black boar of said plaintiff of great value, to-wit, thirty dollars for the purpose aforesaid, and it thereupon then and there became and was the duty of the said defendants to take due and proper care of said black boar, and safely keep, care for, return and deliver to said plaintiff, at and upon his farm in Comstock aforesaid, without injury or damage, and free from disease or exposure to any hurtful, contagious malady, disease or sickness which might affect injuriously the said black boar, and which might or could be in any manner communicated to him or to the said plaintiff's other swine aforesaid, or by said black boar communicated to them.

. Yet the said defendants, not regarding their duty as aforesaid in the premises, afterwards, to-wit, on the 10th day of October, 1879, and on divers and sundry other days and times, between that day and the 26th day of October, 1879, negligently and carelessly contrived craftily and subtly to injure and defraud said plaintiff in this behalf, did not and would not safely and securely keep and take due and proper care of the said black boar, but caused him to be placed and kept with the other swine upon the said County Farm, in the possession, care and custody of the said defendants, which then were distempered, disordered and sick with a noxious, dangerous and contagious disease, commonly called and known as "hog cholera," and so negligently and carelessly kept, used and controlled said black boar that by reason of the premises, the said contagious disease was communicated by the said other swine, so kept by said defendants upon said County Farm, to the said black boar, and which so affected and disordered him that on, to-wit, the 29th day of October, 1879, he died and became worthless to said plaintiff.

And after said black boar and the defendants' swine had become affected and sickened by said contagious disease, as aforesaid, and while he was thus diseased, and while thus in the possession and under the control of said defendants, as aforesaid, to-wit, on the 26th day of October, 1879, said defendants wrongfully, negligently and carelessly, as aforesaid, contriving further to injure and defraud the said plaintiff, did take or cause to be taken the said black boar to and upon the said farm of the said plaintiff, and while said black boar was so affected, disordered and sickened with said contagious disease, wrongfully, carelessly and negligently caused him to be turned into the inclosure, upon plaintiff's said farm, within which the other swine of said plaintiff above mentioned, were kept, and were then and there running, and into the adjoining inclosure, upon plaintiff's said farm, thereby wrongfully, carelessly and negligently exposing and bringing in contact the said black boar, so diseased as aforesaid, with the plaintiff's said other swine upon his

ities in which such persons act, and the duties and obligations which are imposed upon them in managing and taking care of the corporate property, are very clearly stated in Mr. Justice Cooley's work upon Torts. Cooley on Torts, 619–20, and cases cited; *Ashley v. Port Huron* 35 Mich. 296.

---

said farm to the number of forty-one, and which were all then sound and healthy, and of great value, to-wit, three hundred dollars, and by reason of the premises, and by and through the wrong, carelessness and negligence of the said defendants, the said dangerous and contagious disease was communicated, by the said black boar, so diseased and sickened, as aforesaid, to the said forty-one swine of the said plaintiff, so that thereupon, and from the infection thus communicated, they all became sick and disordered with said contagious disease, and in consequence of the same they all died, to the great damage of the plaintiff.

And said plaintiff, in his endeavors to cure his said swine of said contagious disease, so communicated to them, was compelled to and did pay out divers large sums of money, to-wit, fifty dollars for medicine, nursing, care and other things for said swine, all of which said premises are to the damage of the said plaintiff one thousand dollars.

Also for that whereas the said plaintiff heretofore, to-wit, on the 10th day of October, 1879, at, to-wit, the township of Comstock in said county, was the owner and in possession of, upon his farm in said township, a certain other large black boar, and the said defendants on, to-wit, the day and year last aforesaid, at the said town of Comstock, had possession of a large tract of land known as the County Farm, and a quantity of stock thereon, among which were a large number of swine, and had the care, management, custody, direction and control of said farm and stock; and the said plaintiff, on the day and year last above mentioned, at the request of the said defendants, and in consideration that the said defendants would exercise due and proper care in and about the use, custody, management and control of the said black boar, and would not suffer or permit any damage or injury to be done to or occur to said black boar, or suffer or permit him in any manner to be exposed to any infection, contagion or disease of any kind known or common among swine, or to which swine are subject; permitted the said defendants to take said black boar to and upon the said County Farm of said defendants, to be used by them as a stock hog among the swine of said defendants upon said County Farm, and to be returned by said defendants to said plaintiff when he should thereafter request the same. And the said defendants then and there had and received the said black boar of said plaintiff, of great value, to-wit, of the value of thirty dollars, for the purpose aforesaid.

And it then and there became and was the duty of said defendants to take due and proper care of said black boar, and safely keep, care for, return and deliver to said plaintiff, at and upon his said farm in Comstock aforesaid, without injury or damage and free from disease or exposure to any hurtful contagion, infection or disease, which might be communicated to said black boar.

Yet the said defendants, not regarding their duty, as aforesaid, in the premises, afterwards, to-wit, on the day and year last aforesaid, and on divers and sundry other days and times between that day and the 26th day of October, 1879, wrongfully, negligently, carelessly and wilfully

An examination of the above authorities will show that municipal corporations in the care and management of their property, like an individual, are in duty bound to produce no injury to others.

In clearing up the poor-farm the superintendents could not, nor could those in their employ, with impunity, negligently set fires, or carelessly permit them to extend to

---

contrived, craftily and subtly, to injure and defraud the said plaintiff in this behalf; did not and would not take due and proper care of, and safely and securely keep the said black boar, but wrongfully, carelessly, negligently and wilfully caused him, then and there upon said County Farm, to be placed and kept with the swine upon said County Farm, and which were then and there in the custody, care and control of said defendants, and which were then distempered, diseased and sick with a noxious, dangerous and contagious disease, called or known as "hog cholera," and so negligently, carelessly and wilfully kept, used, cared for and controlled said black boar, that by reason of said carelessness and negligence and wilfulness of said defendants, the said contagious disease was communicated by the said swine upon said County Farm, to the said black boar of said plaintiff, and which disease so affected and disordered said black boar that he died of the same and became worthless to the said plaintiff, to the plaintiff's great damage.

And the said plaintiff, in his endeavors to cure said black boar of said contagious disease, so communicated to him by said defendants' swine, as aforesaid, was compelled to furnish him with large amounts of feed and other things to eat, and to pay out, and did pay out divers and large sums of money, to-wit, fifty dollars for medicines, nursing, care and other things for said black boar, and his other hogs, in this and the several other counts in this declaration mentioned. All of which said premises are to the great damage of said plaintiff, to-wit, one thousand dollars, and therefore plaintiff brings his suit.

T. R. SHERWOOD,
Attorney for Plaintiff.

Defendant's counsel objected to the introduction of any evidence under the declaration for these reasons:

1. Because an action against the Superintendents of the Poor, in their name of office is, in reality, against the county, and that the county is a quasi corporation, and not liable, under the laws of this State, to an action for the negligence of officers who are acting in a public capacity, whose duties are prescribed by the State Legislature.

2. Because the Superintendents of the Poor are in no sense agents of the county.

3. Because the Superintendents of the Poor are a quasi corporation, whose powers and duties are prescribed by the general laws of the State, and are for the benefit of the general public, and not for the benefit of such quasi corporation, and that they cannot be liable for any action for negligence in the performance of such duties under the statutes of Michigan.

4. Because the declaration does not allege that the defendants are operating a county poor house in pursuance of their corporate duties, and does not state any facts which show them liable in a corporate capacity, or make the county liable for their acts of negligence.

:and destroy the property of their neighbors, nor could they permit the farm stock to trespass upon the lands of adjoining proprietors and claim exemption from all liability therefor.

The court erred in excluding the evidence offered, and because thereof the judgment must be reversed with costs and a new trial ordered.

The other Justices concurred.

---

5. Because the statute provides that when a tract of land is operated for the supply of the poor, it shall be the duty of the Superintendents to employ a keeper to operate it, in whom the powers of government shall be vested, and the declaration does not allege that the land was operated by a keeper, but that the Superintendents were themselves in possession of the land. It is not one of their statutory duties or powers, they having an appellate power over such keeper, and that such allegations can lay no foundation for an action against them on the case.

6. The declaration does not state that the Superintendents ever directed the defendants to procure the land, or that they were acting under such direction.

7. Because the declaration does not refer to any statute under which this action is brought, and because there is no statute of the State of Michigan that gives them a right to such action.

8. Because the declaration does not allege the Superintendents of the Poor have ever taken action that would make a county support of the poor legal.

9. Because the last count in the declaration if it states any cause of action, states one in assumpsit, under a verbal contract to return the boar in good order, and it is improperly placed with the counts on the case upon negligence for damage to other swine.

10. For the reason that this action is brought for damages alleged to have been caused from the spreading of a contagious disease, communicating of a contagious disease, for which there can be no action given except by statute.

11. I wish to make the further objection that a quasi corporation is not liable either for misfeasance or nonfeasance.